**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sidi Spaces, LLC, | No. CV-16-01670-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| CGS Premier, Inc. | |
| Defendant. | |

Before initiating this suit, Plaintiff sent Defendant a letter asserting various contract and tort claims, and indicating that Plaintiff was "looking into" possible patent infringement claims. The Court must decide whether this letter was a "patent notification" within the meaning of Wis. Stat. § 100.197. The Court holds that it was not.

**I.  Background.**

On December 4, 2013, Plaintiff Sidi Spaces, LLC and Defendant CGS Premier, Inc. entered a License and Sales Agreement ("Agreement") whereby Plaintiff granted Defendant the exclusive right to manufacture and sell mobile stores using its patented BizBox design. Doc. 1-1 at 10-19. Defendant agreed to pay royalties on each BizBox it sold and to refrain from selling these products below a specified minimum price. *Id.* at 11-12. Defendant also agreed that Plaintiff would retain "exclusive ownership rights to the [BizBox] design and all other intellectual property rights . . . with respect to the [BizBox]." *Id.* at 13.

On April 22, 2016, Plaintiff sent a letter to Defendant explaining that it had retained counsel "to take all legal action necessary to get [Defendant] to cease and desist from breaching the parties' agreements" and "to recover damages for these breaches." Doc. 6-1 at 3. The letter stated that Plaintiff was aware of "numerous instances where [Defendant's] design and/or manufacturing of trailers . . . was in direct violation of the [Agreement]." *Id.* The letter claimed that "[Defendant's] employees . . . have been involved in stealing designs by copying measurements and other specifications from BizBox products to build . . . knock-offs." *Id.*

The letter included additional detail about Plaintiff's contract claims, and also described a claim for tortious interference with business relations. *Id.* at 3-5. The penultimate paragraph stated:

> We are also looking into the serious concerns [Plaintiff] has regarding multiple counts of patent infringement. If the Company takes additional action for patent infringement, there is a strong possibility that all products sold by [Defendant] to its clients that infringe the BizBox 20 year Utility Patent will represent illegal sales. As such, these units may be removed from the possession of your clients.

*Id.* at 5. The letter concluded by demanding an initial payment of $1,766,000 to satisfy Plaintiff's contract and tort claims. *Id.* at 5.

Defendant responded to this demand letter on April 27, 2016. Doc. 6-2 at 2-6. Defendant asserted that the letter was a patent notification, subject to the requirements of Wis. Stat. § 100.197. *Id.* at 3-4. Defendant informed Plaintiff that, in its view, the letter violated § 100.197 because it failed to include certain required information and made certain false, misleading, or deceptive statements. *Id.* Defendant demanded that Plaintiff cure these deficiencies within 30 days. *Id.* Plaintiff made no effort to do so. Doc. 6, ¶ 8.

Plaintiff subsequently initiated this action, asserting the contract and tort claims outlined in its demand letter. Doc. 1-1 at 4-9. Defendant counterclaimed under § 100.197. Doc. 6, ¶¶ 4-5. Plaintiff moves to dismiss the counterclaim. Doc. 18. The motion has been fully briefed (Docs. 21, 23) and no party has requested oral argument.

- 2 -

## II. Analysis.

Section 100.197 applies to "patent notifications" – written communications that "attempt in any manner to enforce or assert rights in connection with a patent or pending patent." § 100.197(1)(a). A patent notification must include certain information, including (1) the number of each patent subject to the notification; (2) a copy of each such patent; (3) the name and address of the owner of the patent; (4) "[a]n identification of each claim of each patent or pending patent being asserted and the target's product, service, process, or technology to which that claim relates"; (5) "[f]actual allegations and an analysis setting forth in detail the person's theory of each claim identified"; and (6) an identification of all pending or completed judicial and administrative proceedings related to such patent. § 100.197(2)(a). Such a notification must not include false, misleading, or deceptive information. § 100.197(2)(b).

This statute, passed in 2014, has not yet been subject to judicial interpretation, and the parties disagree as to its scope. Plaintiff argues that the statute does not apply to its demand letter because the letter did not set forth any patent claim or demand payment for such a claim. Doc. 18 at 5. Defendant contends that the statute does not require "an overt statement that a patent right is being enforced or asserted," and that a reference to a potential patent claim is sufficient to bring a communication within the statute's purview. Doc. 21 at 5.

Plaintiff has the better argument. The statute does not apply to every communication that refers to possible patent violations; it applies to communications that seek "to enforce or assert [patent] rights." Thus, the statute applies to communications that "state positively" a patent claim, or attempt "[t]o invoke or enforce" a patent claim, or attempt "to compel a person to pay damages" or provide other relief to discharge such a claim. *See* Black's Law Dictionary (10th ed. 2014) (defining "assert" as "[t]o state positively" or "[t]o invoke or enforce a legal right"); *id.* (defining "enforce" as "[t]o give force or effect to (a law, etc.)" or "to compel a person to pay damages for not complying with (a contract)").

This reading is reinforced by § 100.197's purpose. The statute was designed to combat "patent trolling," Doc. 18-1 at 15, the practice of "assert[ing] patents against numerous potential infringers, relying on the high cost of threatened litigation to extract quick settlements." Paul R. Gugliuzza, *Patent Trolls and Preemption*, 101 Va. L. Rev. 1579, 1581 (2015). This purpose is served by applying the statute to communications seeking to pressure the recipient into settling a patent claim, but it provides no basis for applying the statute to communications that do not seek settlement of a patent claim.

This reading is reinforced by the language of paragraph 2(A). This provision requires a patent notification letter to identify, among other things, "each claim . . . *being asserted*" and the "[f]actual allegations and an analysis" underlying these claims. § 100.197(2)(a) (emphasis added). This language presupposes that the author of the patent notification has developed, and is asserting, a legal theory of patent infringement. It is unclear how a person could satisfy these requirements if he had concerns about possible patent infringement but was unsure whether these concerns gave rise to a legally cognizable claim. This suggests that § 100.197 was not intended to apply to communications that simply express concerns about possible infringement, but stop short of asserting a claim or demanding relief.

Plaintiff's demand letter did not "state positively" that Plaintiff had any right to enforce its patents against Defendant. It stated only that Plaintiff was "looking into" the existence of such a right. Doc. 6-1 at 5. Nor did the letter seek to compel Defendant to pay damages or provide other relief related to any patent claim. *Id.* The Court concludes that it was not an attempt to enforce or assert patent rights within the meaning of § 100.197.

**IT IS ORDERED** that Plaintiff's motion to dismiss Defendant's counterclaim (Doc. 18) is **granted**.

Dated this 25th day of July, 2016.

David G. Campbell
United States District Judge